My name is Ruben Niedes and I'm representing the appellate, Blaine David Whyte. The law with respect to actual and apparent authority consent is well established. Also well established is the fact that a property owner, mere fact that one is a property owner, does not in and of itself mean that that person has actual authority to consent. There are countless cases in the circuit and across the nation in which hotel managers, motel managers, property owners, even a landlord-tenant. But this woman was not that. It was her house originally. All her stuff was in it and it was her house. And her son was living there, Your Honor, and at the time she was not living there. She had not been living there because she had been evacuated by medical personnel. For how long? For a week and a half prior. A week and a half prior she had been found on the floor debilitating. So every time somebody goes to a hospital it's not their house anymore? No, Your Honor, but I think that's an important issue in this case is at what point in time perhaps may one stop having mutual use. And I think the fact here that the homeowner herself indicated that she would not be returning to the house, that she no longer lived there. I think those words coming from her especially indicate that she would not be returning. Our standard of review here, though, is for clear error. And the district court found that she still had the unrestricted right to come in whenever she felt like if someone would help her physically and found that all her possessions were still there. She still used the phone number from that location and simply had her number forwarded rather than changing her phone number. There were a lot of indicators that she still viewed it as hers in more than a mere ownership sense. Why is that clearly erroneous? Well, Your Honor, I would first say that the standard for reviewing a motion is pressed and the issue of consent is de novo. The findings of fact are reviewed for clear error. I'm asking about the findings of fact. Yes. The district court made several clear errors in this case. For example, the court indicated in its opinion in order there was no evidence that Mrs. White did not have a key to her own home and her possessions were accessible to her. I would be interested in hearing about questions relating to the scope of the search more than this issue, if you don't mind. In other words, the fact that after he got the photograph on the floor was moved and what exactly the police officer did after they got into the garage. Shall I address? Yes. Judge, the court also indicated that this would be a reasonable assumption. That wasn't an assumption on the court's part. There was no evidence. And again, I would remind the court that it is the government's burden of proof in this So here there was no evidence whatsoever presented by the government that she had a key in her possession or accessible. In fact, the facts indicated that she did not have the key. The neighbor had prior knowledge of where she had kept the key, but there were no keys found in that location or any other location. So the district court itself uses the word reasonable assumption, and that's simply speculation. It's not evidence. It's nowhere found in the record that Mrs. White had a key. But that's not the only clear error that she made. The district court made also indicated that if she, if, again, I'm using the word, the district court uses the word if she was able or assisted, she could return to the house at any time, enter and stay as long as she wished. Again, no evidence with respect to that. The district court also relied on the 7th Circuit. But there's evidence that it's her house. There's evidence that she was the property owner. Where all her stuff is there. All her stuff was there as well. So what? Remember, it's not an exclusive thing. If he lives there and has the right to consent, then no one else does. It's not exclusive. The fact that her son also lived there is irrelevant, isn't it? I would ask the Court to look at this again, as I began, as more or less a landlord-tenant relationship. He was there. He was supposed to be caring for the house, caring for the dog. He had his possessions there. He'd been a permanent resident there for more than two years. She was known and attested to mutual use of joint access and control. This Circuit has placed a special emphasis on the possession of a key, and we certainly do not have that in this case. Is there any evidence? Because you're in a situation in which somebody doesn't have other indices of living in that house here. Every indication is, as Judge Graber says, that it's her house. Everything is in there. If she wants to come back to Mars, she can come back. If she happened to have given somebody else the key, it doesn't seem dispositive of anything. Well, again, Your Honor, I would indicate that there was no evidence that she had a key. There was no evidence to support this hypothesis by the district court that if she were able, she would return. Was there any evidence that supports the position that the mother's authority over the house was limited? In other words, you're arguing the government didn't put in evidence that she had full authority. It didn't put in evidence she still had a key and so on. But is there evidence that was put in on the other side, direct evidence to the effect that her authority was limited? You know, by somebody saying, I spoke with her and she said, I can't go to that house without my son's permission anymore or it's no longer mine to come and go. Was there direct or even circumstantial evidence on your side? Because one of the problems with this case is, I mean, we know what the general burden of proof is on the government. But given that it was the mother's home and all her stuff was there, she just went in the hospital for a period of time, there's at least a question here on this issue of limited authority or not. Who's got the burden of putting in evidence? Your Honor, I would tell you that there is no evidence of this sort. You mentioned somebody indicating, for example, that they needed him to get into the house or something like that. But what there was, was statements by Mrs. White, heard through the officers, telling them, and I quote, she no longer lived there. Also, there was a neighbor who did testify on behalf of the defense, a neighbor who was third-party disinterested. And she had indicated that she understood that she was not going to be returning. She had had to come to her assistance on several times when the lifeline had been used about five or six times previous. And she clearly understood that she wouldn't be returning. Counsel, before you run out of time, I'd like you to maybe turn to Judge Berzon's question about the scope of consent. Your Honor, I raised that issue before the district court. Again, the neighbor, Ms. Schultz, indicated that she only heard the officers half of the conversation. But she heard the officer on the telephone with Mrs. White when they consented to the question. She testified that she only heard, the only conversation she heard, was with respect to the dog and the caring for the dog. And that was the limited purpose of the entry into the residence, was to care for the dog. The officer testified differently that the scope was greater than that. We raised the issue. The district court did not rule on the scope of consent. Well, implicitly, it must have, by overruling your motion. I would disagree, Your Honor. For example, the court not only indicated that it also, with respect to apparent authority, which is a sub-issue here, which I think is clearly in our favor. No reasonable officer, based on the statements by her previous, would believe that she had authority to consent. It decided that it didn't have to rule on that issue as well. So I think the fact that it just simply didn't. The record is void. What about the question of the fact that, according to the assumption the district court indulged, the officer moved this photograph and thereby exposed something underneath it? Is that consistent with the plain view doctrine or not? Well, Your Honor, I would indicate that, first, if the scope of consent is simply to care for the dog, that by the time that the photo was moved, that that had already been served. The photo was moved. That wasn't in the course? I thought that was in the course of the dog food search. Initially, the officers entered and saw the bowl of water that the neighbors had given the dog. When they actually went in later, even though they saw the food in the water, then Mrs. Schultz was the one who found the dog food, and she had given the dog food. And afterwards, she was looking down at the floor, and she saw the picture, and the officer kicked it away. So plain view, even if we got to that issue, I would say that we know that plain view doesn't apply here. I would say it's something more in the manner of the Hicks case where they actually move property to actually discover then the illegal nature of the property would be more applicable here because the photograph was actually, I believe, it was covered with something else. I don't recall actually if it was upside down or covered, but it's only when the officer moves the object are they able to see that it's something, and even then it's not even anything illegal. It's simply a picture. Mr. Enriquez, you have about a half a minute left for rebuttal, if you'd like to say anything. I would. Thank you. We'll hear from the government. Thank you very much, Your Honor, counsel, members of the court, Franklin Enriquez on behalf of the government. I have just a few comments to add in the brief, and I'll try to answer any questions the court has. First of all, the court has already noted this, but it's in my notes, so I guess I'll do it again. The review is de novo, but review of the underlying facts, I believe, is for clear error. And Judge Reddin did make some fact findings. First of all, with respect to the issue of actual consent, and those facts, as he found them, and I'm not going to read all of those into the record, but are set forth at page 8 of the government's brief, where Judge Reddin noted, and I believe, although as I review the cases, there is some discussion in some of this court's cases regarding the scope with respect to not actual authority, but presumed authority. But the fact findings, I think, are still for clear error, that she had common authority, that she was the owner, and I think this is a fair inference that Judge Reddin could have drawn from the facts, and I don't think it involved any shifting of the burden of proof. He found no evidence to dispute that if she were able or assisted, she could not go there at any time. And I review the record once again. Unless I'm missing something, I don't think there's any affirmative evidence in this record that after the two weeks to a week and a half that Mrs. White had been removed from the home, that she did not have the authority or intention to someday go back there. I looked at that again this morning, and I just don't think there's that kind of evidence. And my position on that, Your Honors, is that Judge Reddin, not unlike a jury, could draw reasonable inferences from the facts that he heard. And one inference that he could have drawn, and had he drawn it the other way, we would have still been bound, is that she could go back there. He relied on the Duran case. The government relies also on the Brandon and Long cases in that regard. And then, as the court noted, he also found that she was using the home as an address for voting and driver's licenses. She kept her possession there. And I think it's also worth noting she had her little dog there. She was worried about the dog. And she wanted the officer to go in and check and see how the dog was doing. And as I think Mr. Eniguez candidly concedes, that while if you take one half of the telephone conversation, you might assume some things, clearly the officer testified, and the judge found the officer credible, that she was asking him to go in and check and make sure everything was all right in the home, and was asking him to make sure the home was secured. Did the judge make such a finding? Well, he said at some point he found that Officer Amanda Lara's testimony was credible. And I think specifically, Your Honor, he found that with respect to Officer Amanda Lara's... I feel it's... In page 11 of the government's brief, and at page 119 of the excerpt of the record, he did find Officer Amanda Lara to be credible regarding comments on the telephone, that the defendant was staying in the house, he'd been allowing other people to stay there, she wasn't happy about it. He never made a finding that there was a consent to go into the house. I think he found that... He found that it was reasonable for the officers to believe that Mrs. White had common actual authority to give consent, and I would argue that he found that she did consent to this going in. I don't think that statement in his findings would make sense. It's sort of obvious in his absence, actually. The officers had a right to be in the garage by virtue of Mrs. White's consent and her request. The officers were in the garage to find dog food and discover the check in conjunction with the authorized entry. Well, I'm sorry, I misunderstood your question. No, I don't think he ever found that she told them to go in the house. And, in fact, the court recalled from the evidence they didn't do that. But you had said earlier that the conversation was to go into the house and check out... I did, Your Honor. I probably misstated it. Well, he says... I'm looking at the bottom of page 3 of the opinion in order up to the top. Mrs. White responded she would like you to do that, which is to make sure the house was secure. Officer Amendolara asked if she wanted them to go inside the house to check, and she told him, oh, definitely. And then it goes on from there. She was mad about the son letting who knows who. I think, Your Honor, the facts are that once the officers observed items in the garage, they then decided not to enter the house. I don't think there was ever an entry into the home itself. They were in the garage, and there's testimony in the record from Officer Amendolara that once he saw the items, including the check, they... I forget his name. I think he said, we backed out. Then the other detective, Boyd, arrived, and he went off to get a search warrant. Because the door to the house was locked, right? Yes, and until the warrant, they didn't actually enter the house. All right, and then my other question has to do with this photograph, or whatever it was, and what was found under it. I think that your opposing counsel was wrong about the sequence of events, as I understand it. The testimony of the neighbor was that she noticed the photograph while she was getting the food for the dogs. So assuming that's true, but it was also her testimony, and the judge assumed it to be the case that the officer moved the photograph. So the question is, is that a search? And if it's not a search, why isn't it a search? Well, assuming it is a search, I think the officers were authorized under Officer Amendolara's testimony to enter and secure the residence and check it out and make sure things were okay. And I think that would be okay. But I think the inference to be drawn, it's the inference I draw, and I guess it's up to you folks to draw the inference that's appropriate, was that the officer was wandering more or less in the garage and going into the garage with the neighbor. We don't have that picture, but there on the floor is some type of a picture. I'm not remembering whether they described it as pornography, but I think it was described in the transcript as a picture of a naked lady or a naked woman. And as the neighbor looked at that, the officer said, oh, you shouldn't be looking at that, or something to that effect. And I think that's what he did, and I'm recalling that he kicked her. He says he didn't. The issue is whether the district court was required to make a specific finding. The officer said nothing was moved to see the check. The check was already in plain view. And the other witness said, no, it wasn't in plain view until the crumpled picture got moved six inches to one side. The district court basically said, well, it doesn't matter because they weren't really looking for anything anyway. He was just trying to get the pornographic picture out of the way. And so the question really that the defendant is raising, it seems to me, is is the district court required to decide for sure which one of them was telling the correct story about whether the check was already visible. I think under either scenario, Your Honor, the check was in plain view and the officers couldn't. It wasn't in plain view. Can you be in plain view if you can't see it? Well, assuming the neighbor's testimony is correct, I don't think it was unreasonable for a police officer to move the picture of the naked lady out of view. In fact, that's what he did. And further, I think that even if he did that and even if this Court is inclined to say that movement of the picture is a search, that that search would have been authorized by the consent given by Mrs. White. There are no indications of any limitation whatsoever, Your Honor. Well, actually, as to whether the district court made any findings, the part that was being read before was the district court's account of what the officer testified to, but he never made a finding that, in fact, there was not consent. He said, Officer Amendola said this and said that and said that. And then later on, when he was dealing with the consent question, he talked about consent to deal with the dog, but not anything more general. I know that this all sounds a little silly, but in terms of moving this pornographic picture, but I did go looking for cases that would regard an inadvertent moving of something without consent and thinking for the moment that it was out of consent as not being a search, and I couldn't quite find them. Do you have them? I mean, if you weren't looking for anything in particular, you just moved something, you know, sort of for extraneous reasons. Well, my bet is, and I don't mean this flippantly, that if he didn't find it, I probably wouldn't find it either. I don't think, I don't know of any. I mean, the question I guess is, assuming the testimony of the neighbor correct, the officer's in there with the neighbor, he sees this picture, I think it would be a pretty normal thing for a police officer to say without giving it a huge amount of thought, oh, you shouldn't be looking at that, don't move it. And that, without more, is not really a search. And then he sees the chip. And then, of course, they see the other items in the garage. I don't have a case to that. But I think, again, it's within the scope of the concern. Counselor, your time has expired, so if you'd like to sum up. Very, very, very briefly. With respect to the reasonableness of the officers, the Rodriguez case, and I want to just talk briefly about that, with regard to reasonable reliance, and I won't repeat all of it. We see no reason to depart from a general rule with respect to facts bearing on authority to consent with search. Whether the basis for such authority exists is a sort of recurring factual question to which law enforcement officials must be expected to apply their judgment. And all the Fourth Amendment requires is that they answer it reasonably. I think the officers did that in this case. I think it would have been very unreasonable for them simply to walk away and not do anything in response to the request from Ms. White. And I think they'd have a reason to believe she had that authority. Thank you for your time, though. Mr. Enriquez, you have a little bit of rebuttal time left. Thank you, Your Honor. I would only say that the district court here made several clear errors, first with respect to the key, as I've noted, and then with respect to Ms. White's ability to come back and ensure that the burden is on the government. There was no such evidence introduced by the government showing that she would return. The Durand case, the reliance there is misplaced. In that case, the wife testified that she could enter the barn if she wanted to, but she never did. Here there was no such testimony by Ms. White. With respect to the issue of scope of consent, that issue was raised and was never addressed by the district court. There is conflicting testimony between Ms. Schultz and the officer. On page 68, Your Honor, there is indication that after she gave the dog food, she noticed the paper on the floor. She also says later on that she was reaching into the dog food when she was bending down and she could see the crumple of paper. But in any respect, the paper was covering the check. According to her. Yes. According to the neighbor. Okay. Thank you. The case just argued is submitted. We appreciate very much the arguments of both parties. And the next case on the argument calendar is Singh v. Ashcroft. Morning. My name is Tilwat Asha. I'm the attorney for Dalit Singh.
judges: Graber, Gould, Berzon